**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Case No. 2:15-CR-080** |
| **Plaintiff,** | : | **Case No. 2:14-CR-127** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **ROBERT B. LEDBETTER,** *et al.* | : | |
| | : | |
| **Defendants.** | : | |

<u>**OPINION & ORDER**</u>

This matter comes before the Court on Defendants' motions to dismiss various charges due to alleged violations of the relevant statutes of limitation[1] and alleged Due Process violations stemming from undue pre-indictment delay.[2]  Defendants seek protection from what they deem stale criminal charges under both 18 U.S.C. § 3282 and the Due Process Clause of the Fifth Amendment.  Defendants, however, have misconstrued the relevant statutes of limitation as well as the law governing accomplishment of, or withdrawal from, a criminal conspiracy.  Moreover, Defendants have not satisfied their burden of demonstrating substantial prejudice stemming from any pre-indictment delay or that the Government intentionally delayed bringing charges to gain a tactical advantage in this case.  Accordingly, the Court **DENIES** Defendants' motions to dismiss.

---

[1] Robert B. Ledbetter (Doc. 632), Lance A. Green (Doc. 636), Allen L. Wright (Doc. 638), Tysin L. Gordon (Doc. 627), Christopher A. Harris (Doc. 628), Robert L. Wilson III (Doc. 642), Thomas E. Coates (Doc. 495), and Ishmael Bowers (Doc. 643), moved to dismiss various charges due to purported violations of the relevant statutes of limitation.  The Government opposed Defendants' motions. (Docs. 523 and 657.)  Tysin L. Gordon alone filed a reply brief.  (Doc. 659.)

[2] Robert B. Ledbetter (Doc. 499), Lance A. Green (Doc. 635), Allen L. Wright (Docs. 501 and 638), Christopher A. Harris (Doc. 629), Robert L. Wilson III (Doc. 642), Thomas E. Coates (Doc. 491), Ishmael Bowers (Doc. 643), and Johnathan Holt (Doc. 435), also moved to dismiss the indictments in their entirety due to alleged unconstitutional pre-indictment delay.  The Government likewise opposed Defendants' motions. (Docs. 522 and 658.)

## I. BACKGROUND

On June 23, 2014, a federal grand jury returned a twenty-five count Indictment in Case Number 2:14-cr-127 charging seventeen defendants with a number of violations under federal law connected to the defendants' alleged involvement in the Short North Posse, an alleged criminal organization in the Short North Area of Columbus, Ohio.  (Doc. 14).  The first count in the Indictment alleged the existence of a RICO conspiracy from 2005 until 2014, in which the enterprise, the Short North Posse, committed murder, attempted murder and robbery, distributed and possessed with the intent to distribute controlled substances, tampered with witnesses, and committed acts of extortion, robbery, and retaliation against witnesses.  The remaining counts included eleven counts of murder in aid of racketeering, one count of murder through the use of a firearm during and in relation to a crime of violence, four counts of murder through the use of a firearm during and in relation to a drug trafficking crime, one count of conspiracy to murder a witness, one count of use of a firearm during and in relation to a crime of violence, four counts of being a felon in possession of a firearm, one count of possession with intent to distribute cocaine, and one count of possession with intent to distribute heroin.

On October 20, 2014, the grand jury returned a Superseding Indictment adding three new defendants and thirteen counts, bringing the total to twenty defendants and thirty-eight counts. (Doc. 300).  These thirteen new counts included one count of attempted possession with intent to distribute cocaine, five counts of use of a firearm during and in relation to a drug trafficking crime, murder in aid of racketeering, four counts of possession with the intent to distribute marijuana, one count of attempted possession with intent to distribute marijuana, and one count of witness tampering.  The three new defendants were Andre M. Brown, Johnathan Holt, and Christopher V. Wharton.

On April 2, 2015, the grand jury returned another Indictment that was later assigned as a separate case—Case Number 2:15-cr-080.   The 2015 Indictment named four defendants (Robert B. Ledbetter, Christopher A. Harris, Rashad A. Liston, and Deounte Ussury), all of whom were charged previously in the Superseding Indictment in Case Number 2:14-cr-127.  The 2015 Indictment also included two new counts: one for murder in aid of racketeering and one for murder through the use of a firearm during and in relation to a drug trafficking crime—both related to the murder of Marschell Brumfield, Jr. in 2007.  Due to the similarity of the charges in both cases and the fact that all four defendants also were charged in Count One of the Superseding Indictment for their role in the RICO conspiracy, this Court joined Case Number 2:15-cr-080 with Case Number 2:14-cr-127 under Federal Rule of Criminal Procedure 13. (Doc. 595).

In total, fourteen defendants are charged in the RICO conspiracy count, which includes 112 overt acts allegedly committed in furtherance of the conspiracy.   The Government, moreover, has reserved the right to adduce evidence of any overt act about which it has evidence, regardless of whether the Superseding Indictment specifically identifies that overt act.  The six defendants who do not face the conspiracy charge are all charged with at least one count of murder in aid of racketeering relating to their membership and/or association with the Short North Posse, among other charges.   Under the Superseding Indictment in Case Number 2:14-cr-127 and the 2015 Indictment in Case Number 2:15-cr-080, the defendants collectively face a total of forty counts.   Although fourteen defendants initially faced a potential capital prosecution, the Government recently informed the Court and the defendants of its intent not to seek the death penalty for any of the defendants.  (Doc. 563).

Defendants argue that several charges violate the relevant statutes of limitation. Defendants base this defense on two grounds: (1) the Court's previous finding that "the matter is no longer a capital case" for purposes of appointing dual counsel under 18 U.S.C. § 3005 (Doc. 602); and (2) Defendants' purported accomplishment of, or withdrawal from, the RICO conspiracy more than five years before the Government filed charges. As to the first ground, Defendants reason that because the Government no longer seeks the death penalty, the offenses for which they are charged no longer qualify as "punishable by death" within the meaning of 18 U.S.C. § 3281, which carries no time-limit for prosecution. Thus, Defendants argue that the five-year statute of limitations from § 3282 (for non-capital offenses) applies. Defendants further argue that several of the substantive charges fall well outside this five-year limitations period. As to the second ground, Defendants maintain that they accomplished or withdrew from the alleged RICO conspiracy more than five years before the Government filed charges due to their cessation of illegal activity and imprisonment. Defendants thus argue that their role in the alleged conspiracy was "complete" before onset of the five-year limitations period.

Defendants further argue that, even if the charges do not fall outside the relevant statutes of limitation, the Due Process Clause of the Fifth Amendment requires dismissal of the indictments because the Government unreasonably delayed bringing charges. Put simply, Defendants maintain that they cannot receive a fair trial on charges that, in many instances, date back over a decade. Defendants cite a litany of harms that might result from defending against such charges, including the difficulty of locating witnesses, the inability of witnesses to recall adequately the events in question, and the loss or destruction of exculpatory evidence. Defendants allege that the Government has no legitimate reason for such a lengthy and prejudicial pre-indictment delay.

## II. STANDARD OF REVIEW

Legislatively enacted statutes of limitation, together with the Due Process Clause, provide safeguards "against bringing overly stale criminal charges." *United States v. Lovasco*, 431 U.S. 783, 789 (1977) (quotation omitted). Statutes of limitation "provide the *primary* guarantee" against undue pre-indictment delay. *Id.* (emphasis added) (quotation omitted). These statutes represent legislative balancing between the relative interests of society and the accused in administering and receiving justice. *United States v. Marion*, 404 U.S. 307, 322 (1971). Such statutes "protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time" and "minimize the danger of official punishment because of acts in the far-distant past." *Id.* at 323 (quotation omitted). The applicability of a statute of limitations is a question of statutory interpretation, which this Court reviews de novo. *See United States v. Blanchard*, 618 F.3d 562, 567 (6th Cir. 2010).

The Due Process Clause, in turn, plays only "a limited role" in protecting against excessive pre-indictment delay. *Lovasco*, 431 U.S. at 789 (quotation omitted). To prevail, defendants must establish (1) "substantial prejudice" to their right to a fair trial, *an*d (2) that the government intentionally caused the delay "to gain a tactical advantage" over the accused. *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992) (quotation omitted). Defendants bear a "heavy burden" in proving unconstitutional delay. *United States v. Wright*, 343 F.3d 849, 860 (6th Cir. 2003) (quotation omitted); *see also United States v. Rogers*, 118 F.3d 466, 477 n.10 (6th Cir. 1997) (noting that "[t]he standard for pre-indictment delay is nearly insurmountable"). Defendants may not rely solely on the "possibility of prejudice inherent in any extended delay," *Marion*, 404 U.S. at 326, and courts often hold that "a delay resulting from investigative efforts" does not run afoul of the Constitution, even when prejudice is shown, *Rogers*, 118 F.3d at 476.

5

## III. ANALYSIS

Under the doctrine of constitutional avoidance, courts avoid constitutional questions when a case can be resolved on narrower grounds. *See Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case." (quotation omitted)); *see also Muller Optical Co. v. EEOC*, 743 F.2d 380, 386 (6th Cir. 1984) ("The duty to avoid decisions of constitutional questions . . . [is] based upon the general policy of judicial restraint."). Thus, the Court proceeds first to analyze Defendants' statute-of-limitations arguments, and will address Defendants' Due Process arguments only to the extent necessary.

### A. Statute of Limitations

Defendants first argue that several charges are time-barred under the applicable statutes of limitation. This argument falls short, however, because Defendants misconstrue the applicable statute of limitations for the murder charges as well as the law governing accomplishment of, or withdrawal from, a criminal conspiracy. All told, not one of the charges is time-barred.

#### 1. *The Murder Counts Are Not Time-Barred.*

Six of the defendants moved to dismiss various murder counts based on a purported violation of the statute of limitations.[3] This defense hinges on whether 18 U.S.C. § 3281 or § 3282 supplies the appropriate limitations period.

---

[3] Robert B. Ledbetter moved to dismiss Counts Four, Nine, and Ten from the Superseding Indictment for the 2006 murder of Alan Johnson (Count Four) and the 2007 murder of Rodriccos Williams (Counts Nine and Ten), as well as the 2015 Indictment in Case Number 2:15-cr-080 for the 2007 murder of Marschell Brumfield, Jr. (Doc. 632).

Lance A. Green moved to dismiss Counts Two and Three from the Superseding Indictment for the 2005 murder of Sanikqua Hester (Count Two) and the 2006 murder of Michael Teague (Count Three). (Doc. 636).

The federal criminal code contains two general statute-of-limitations provisions.  Under § 3281, "[a]n indictment for any offense *punishable by death* may be found at any time without limitation."  18 U.S.C. § 3281 (emphasis added).  Under § 3282, "no person shall be prosecuted, tried, or punished for any offense, *not capital*, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."  *Id.* § 3282(a) (emphasis added).  Defendants acknowledge that the murder counts are presumptively "punishable by death" and, therefore, ordinarily would fall under § 3281, which carries no limitations period.  Defendants argue, however, that § 3281 no longer applies because the Government has filed a notice of intent not to seek the death penalty.  Defendants therefore contend that the murder counts are no longer "punishable by death" within the meaning of § 3281, but instead, are "not capital [offenses]" within the meaning of § 3282.  Under Defendants' logic, the murder counts are time-barred because the alleged crimes occurred beyond the five-year limitations period from § 3282.

---

In the interest of judicial efficiency, Allen L. Wright moved to join his co-defendants' pleadings. (Doc. 638).  The Court hereby grants Mr. Wright's motion.  Given that Mr. Wright and Mr. Green are both charged with the same murder counts (Counts Two and Three from the Superseding Indictment), the Court will construe Mr. Wright's motion on par with Mr. Green's.

Christopher A. Harris moved to dismiss Counts Five through Ten of the Superseding Indictment for the 2007 murder of Donathan Moon (Counts Five and Six), the 2007 murder of Marcus Peters (Counts Seven and Eight), and the 2007 murder of Rodriccos Williams (Counts Nine and Ten), as well as the 2015 Indictment in Case Number 2:15-cr-080 for the 2007 murder of Marschell Brumfield, Jr.  (Doc. 628).

Robert Wilson III moved to join his co-defendants' pleadings.  (Doc. 642).  The Court hereby grants Mr. Wilson's motion.  Given that Mr. Wilson and Mr. Harris face significant overlap in the murder counts with which they are charged, the Court will construe Mr. Wilson's motion on par with Mr. Harris's and consider dismissal of Counts Five, Six, Nine, Ten, Fifteen, and Sixteen of the Superseding Indictment for the 2007 murder of Donathan Moon (Counts Five and Six), the 2007 murder of Rodriccos Williams (Counts Nine and Ten), and the 2008 murder of Tyrell Davis (Counts Fifteen and Sixteen).

Ishmael Bowers moved to join his co-defendants' pleadings.  (Doc. 643).  He seeks dismissal of Counts Thirteen and Fourteen of the Superseding Indictment for the 2008 murder of Shane Allen McCuen.  The Court hereby grants Mr. Bowers's motion and will construe it on par with his co-defendants' motions.

Defendants look for support in this Court's prior order regarding the *unrelated* issue of whether Defendants remained entitled to the appointment of two counsel—a procedural safeguard afforded to defendants facing charges of a "capital crime"—even after the Government elected not to seek the death penalty.  *See* 18 U.S.C. § 3005.  In that order, this Court followed the majority of circuits in holding that once the government decides not to seek the death penalty, "defendants no longer have a[n] [absolute] statutory right to a second court-appointed counsel who is learned in capital cases, *because the matter is no longer a capital case within the meaning of § 3005*."  (Doc. 602) (emphasis added).  Defendants presume that this Court's finding that the matter is no longer a "capital case" for purposes of appointing dual counsel under § 3005 applies with equal force to the unrelated question of whether the offenses charged are "punishable by death" for purposes of determining the appropriate statute of limitations. Defendants are wrong twice over.

*First*, the Government's decision not to seek the death penalty does not alter the applicable statute of limitations for the murder counts.  Federal courts have addressed and rejected Defendants' argument in a variety of analogous circumstances.  *See, e.g.*, *United States v. Payne*, 591 F.3d 46, 59 (2d Cir. 2010); *United States v. Gallaher*, 624 F.3d 934, 939-40 (9th Cir. 2010); *United States v. Ealy*, 363 F.3d 292, 296-97 (4th Cir. 2004).  In determining whether an offense is "punishable by death" within the meaning of 18 U.S.C. § 3281, courts "look to the character of the offense and the penalties that are set out by statute,"—*not* "whether the death penalty *is sought by the prosecution* or ultimately found appropriate by the factfinder or the court."  *Payne*, 591 F.3d at 59 (emphasis added); *see also Gallaher*, 624 F.3d at 940 (concluding that "the statute of limitations provisions of sections 3281 and 3282 are inextricably tied to the nature of the offense" (quotation omitted)).

For example, in *Payne*, the defendant argued that his convictions for murder in aid of racketeering should have been dismissed because the murders in question occurred outside the five-year limitations period set forth in § 3282. 591 F.3d at 56. The defendant argued that because the government failed to allege or prove any aggravating factors, his offenses were not "punishable by death" under § 3281. *Id.* at 56-57. The Second Circuit disagreed, holding that, in the context of § 3281, an offense is "punishable by death" so long as the statute authorizes death as a punishment, "regardless of whether the death penalty is sought by the prosecution" or ultimately found appropriate under the circumstances. *Id.* at 59. The court held that because a murder committed in aid of racketeering can be "punished . . . by death" under the relevant statute, the defendant's charge fell under § 3281, and no time limitations applied to bar his prosecution. *Id.* (quoting 18 U.S.C. § 1959(a)(1)).

Similarly, in *Gallaher*, the Ninth Circuit concluded that the conditional elimination of the death penalty for the offense charged (murder on a Native American reservation) did not change the status of the crime as one "punishable by death" under federal law. 624 F.3d at 940 (holding that the crime was subject to an unlimited limitations period under § 3281). As that court explained, "whether a crime is 'punishable by death' under § 3281 or 'capital' under § 3282 depends on whether the death penalty may be imposed for the crime *under the enabling statute*, not on whether the death penalty is in fact available for defendants in a particular case." *Id.* (emphasis added) (quotation omitted). The court held that because premeditated murder "is generally punishable by death under federal law," the Confederated Tribes' decision to prohibit capital punishment on the Colville Reservation did not remove the defendant's murder charge from the ambit of § 3281. *Id.* at 940. Instead, the court held that the district court correctly applied an unlimited statute of limitations. *Id.*

Likewise, in *Ealy*, the Fourth Circuit reached a similar result, where a defendant convicted of several federal murder offenses asserted that his crimes were not "punishable by death" for limitations purposes because the death penalty could not have been constitutionally imposed in light of the Supreme Court's decision in *Furman v. Georgia*, 408 U.S. 238 (1972). 363 F.3d at 296-97. The court rejected that argument and instead looked solely to whether the enabling statute authorized the death penalty—"not on whether the death penalty is in fact available for defendants in a particular case." *Id.* Accordingly, even though imposition of the death penalty might have been unconstitutional in *Ealy*, the court still found that the crimes were "punishable by death" within the meaning of § 3281 and thus, the defendant's prosecution was not time-barred. *Id.* at 297.

Although the Sixth Circuit has not yet ruled on whether a crime is "punishable by death" within the meaning of § 3281 when the death penalty may not, in fact, be available in a given case, at least one lower court within this Circuit has followed the lead of *Payne*, *Gallaher*, and *Ealy*. *See In re Extradition of Azra Basic*, No. 5:11-MJ-5002-REW, 2011 WL 5326140, at *7 (E.D. Ky. Nov. 4, 2011). In *Basic*, the court denied in part a respondent's effort to block her extradition to Bosnia and Herzegovina ("BiH") to face prosecution for war crimes. *Id.* at *1. Basic argued that she should not be extradited under the relevant treaty because BiH does not impose the death penalty. *Id.* at *7. She contended that the unavailability of the death penalty in BiH meant that the capital statute of limitations in § 3281 did not apply to the court's extradition analysis. *Id.* The court rejected her argument and found that "[t]he 'punishable' measure [from § 3281] relates to the generic offense character, not penalty application or applicability in a concrete case." *Id.* Accordingly, the court found that, to the extent the complaint encompassed murder allegations, the treaty would not block Basic's extradition based on timeliness. *Id.*

This Court finds *Payne*, *Gallaher*, *Ealy*, and *Basic* persuasive and will follow their logic with respect to applicability of the capital statute of limitations from § 3281.  To determine whether the murder offenses are "punishable by death" within the meaning of § 3281, this Court looks to the character of the offenses and the penalties set out by the enabling statutes—not whether the Government is in fact seeking the death penalty.  *See Payne*, 591 F.3d at 59.  In this instance, the enabling statutes provide that a person who commits murder in aid of racketeering, murder through the use of a firearm during and in relation to a crime of violence, or murder through the use of a firearm during and in relation to a drug trafficking crime may be "punished by death."  18 U.S.C. § 1959(a)(1) (murder in aid of racketeering may be punished "by death"); *id.* § 924(c), (j)(1) (murder through use of a firearm during and in relation to a crime of violence or during and in relation to a drug trafficking crime may be "punished by death").  Accordingly, the offenses charged are all "punishable by death" within the meaning of § 3281, and no limitations period applies to bar the instant prosecution.

Imagine the perverse incentives were the rule otherwise.  If Defendants' view were correct, and the applicability of the statute of limitations hinged solely on prosecutorial discretion to seek or forego the death penalty, what prosecutor in her right mind would *ever* forego the death penalty when prosecuting a capital crime that was committed more than five years before the filing of charges?  Such a prosecution would be time-barred under Defendants' view—virtually ensuring that no prosecutor would ever show discretion or leniency in the penalties sought.  Moreover, if Defendants' view were correct, courts and attorneys would waste untold hours and precious judicial resources trying capital cases to their conclusion, only to realize *after* the mitigation phase that the offenses charged were time-barred all along solely because the jury found imposition of the death penalty inappropriate.  These results are not tenable.

*Second*, Defendants erroneously conflate this Court's prior finding that the matter "is no longer a capital case *within the meaning of § 3005*" with a finding that the matter is no longer a capital case for purposes of applying the appropriate statute of limitations. The extent to which Defendants are entitled to two attorneys under a separate procedural statute has no bearing on whether their prosecution is time-barred under the statute of limitations. Nowhere in this Court's prior order did the Court consider, let alone resolve, *that* question.

Meaningful distinctions exist between the many statutes and rules of criminal procedure that depend for their operation on the defendant being charged with a "capital crime." *See, e.g.*, *Gallaher*, 624 F.3d at 939-40 (collecting cases). Whether those statutes and rules remain in force after the Government signals its intent not to seek the death penalty depends on whether they exist to "protect a defendant due to the nature of the risks or complexities of a capital trial" (like the dual-attorney provision from § 3005), or whether they "relate[] to the nature of the offense as it affects society" (like statutes of limitation). *Id.* at 940 (quotation omitted); *see also United States v. Shepherd*, 576 F.2d 719, 728 (7th Cir. 1978) (collecting cases). At bottom, "[w]here the purpose of a safeguard is to reduce that chance that an innocent defendant would be put to death, elimination of the death penalty also eliminates the procedural right," at least as a matter of course. *Gallaher*, 624 F.3d at 940 (quotation omitted). That is all this Court found in its prior order—namely, that because the Government "no longer intends to seek the death penalty, defendants no longer have an absolute statutory right to two counsel under § 3005." (Doc. 602); *see also United States v. Dufur*, 648 F.2d 512, 515 (9th Cir. 1980). That decision, however, bears no impact on the applicable statute of limitations, which is a question "inextricably tied to the nature of the offense." *Gallaher*, 624 F.3d at 940. Accordingly, 18 U.S.C. § 3281 applies, and the murder counts are not time-barred.

### 2. *The RICO Conspiracy Count Is Not Time-Barred.*

Six of the defendants also moved to dismiss Count One from the Superseding Indictment (RICO conspiracy) based on a purported violation of the statute of limitations.[4]  The parties agree that 18 U.S.C. § 3282 supplies a five-year statute of limitations for Count One.  Therefore, Defendants' argument hinges on whether they accomplished or withdrew from the alleged RICO conspiracy more than five years before the Government filed the first indictment, which occurred on June 24, 2014.  (Doc. 14).  Put differently, if Defendants accomplished or withdrew from the alleged conspiracy before June 24, 2009, then Count One is time-barred, thereby providing "a complete defense to prosecution."  *Smith v. United States*, 133 S. Ct. 714, 717 (2013).

Unlike *substantive* RICO charges, which require proof that defendants commit "at least one predicate act within the five-year limitations period," RICO *conspiracy* charges "do[] not require the government to prove that *any* predicate act was actually committed at all."  *United States v. Saadey*, 393 F.3d 669, 677 (6th Cir. 2005).   Instead, the RICO conspiracy statute makes it unlawful "to conspire to violate" any of the substantive RICO provisions.  *Salinas v. United States*, 522 U.S. 52, 63 (1997) (quoting 18 U.S.C. § 1962(d)).  As such, RICO conspiracy prosecutions are not time-barred simply because there is an absence of proof of an overt act within the five-year limitations period.  *Saadey*, 393 F.3d at 677-78; *see also Brown v. United States*, 261 F. App'x 865, 867 (6th Cir. 2008) (affirming conspiracy conviction despite lack of overt acts committed within statute-of-limitations period).  Rather, "a RICO conspiracy offense is complete, thus commencing the running of the five-year statute of limitations, only when the purposes of the conspiracy have either been accomplished or abandoned."  *United States v. Tocco*, 200 F.3d 401, 425 n.9 (6th Cir. 2000).

---

[4] Lance A. Green, Allen L. Wright (through joinder of his co-defendants' pleadings), Tysin L. Gordon, Christopher A. Harris, Robert L. Wilson III (through joinder of his co-defendants' pleadings), and Thomas E. Coates all moved to dismiss Count One from the Superseding Indictment.

Defendants argue that the purposes of the alleged conspiracy were "accomplished" because the Superseding Indictment does specify any overt acts that *these* defendants committed within the five-year limitations period. (*See, e.g.*, Doc. 636) ("In this case, the last overt act alleged against [Lance] Green in Count One is number 56, which allegedly took place on May 9, 2008. In other words, as to Green, the alleged conspiracy was complete as of this date."). Defendants further argue that the purposes of the conspiracy were "abandoned" by way of withdrawal when Defendants were arrested before onset of the five-year limitations period. (*See, e.g.*, Doc. 628) ("[Christopher] Harris was arrested [on July 19, 2008] and he has been incarcerated ever since; thus, Harris abandoned and withdrew from the conspiracy.").

Here again, Defendants miss the mark. Under the "accomplished" prong, the question is not whether the purposes of the *individual defendants* have been achieved, but rather, whether the purposes of the *conspiracy* have been achieved. *See, e.g.*, *United States v. Moss*, 9 F.3d 543, 549 (6th Cir. 1993) ("[A] conspiracy has ended when its objectives have been achieved . . . ."). To that end, "[i]t is undisputed that a defendant-conspirator can remain liable for the acts of his co-conspirators through the end of the agreed-upon conspiracy, *even if the defendant has ceased affirmative acts in furtherance of the conspiracy*." *United States v. Makki*, 129 F. App'x 185, 191 (6th Cir. 2005) (emphasis added). Indeed, such continuing liability is *presumed* absent any affirmative act of withdrawal. *Smith*, 133 S. Ct. at 717; *United States v. True*, 250 F.3d 410, 425 (6th Cir. 2001); *Makki*, 129 F. App'x at 191. Defendants cannot overcome this presumption and avoid liability on statute-of-limitations grounds merely by pointing to their own purported cessation of illegal activity. *See Saadey*, 393 F.3d at 677-78 (holding that, in the absence of evidence of "accomplish[ment]" or "withdrawal," RICO-conspiracy prosecution was not time-barred); s*ee also United States v. Hohn*, 293 F. App'x 395, 397 (6th Cir. 2008) (same).

14

Defendants fare no better under their withdrawal-through-imprisonment argument. Withdrawal from a conspiracy constitutes an affirmative defense, for which Defendants bear the burden of proof, even when the withdrawal claim intersects with a statute-of-limitations claim. *Smith*, 133 S. Ct. at 720; *Brown v. United States*, 261 F. App'x 865, 866 (6th Cir. 2008).  To prevail, Defendants must overcome "well-settled law that once a conspiracy is established . . . its members continue to be conspirators until there has been *an affirmative showing* that they have withdrawn."  *Brown*, 261 F. App'x at 866 (emphasis added) (quotation omitted).  This typically occurs through "either a full confession to the authorities" or "communication[s] to . . . co-conspirators that [the defendant] has abandoned the enterprise and its goals."  *Id.*

Incarceration, standing alone, does not constitute withdrawal from a conspiracy. *See Makki*, 129 F. App'x at 191 (holding that withdrawal requires an affirmative act, "even if the defendant is arrested or imprisoned"); *see also, e.g.*, *United States v. Johnson*, 737 F.3d 522, 526 (8th Cir. 2013) ("Incarceration alone does not constitute withdrawal."); *United States v. Leslie*, 658 F.3d 140, 144 (2d Cir. 2011) ("[Defendant's] imprisonment did not, as a matter of law, constitute a withdrawal from the conspiracy."); *United States v. Puig-Infante*, 19 F.3d 929, 945 (5th Cir. 1994) ("Because a defendant's incarceration is not an affirmative act on the part of a defendant, it cannot, *by itself*, constitute withdrawal or abandonment."); *United States v. Gonzales*, 940 F.2d 1413, 1427 (11th Cir. 1991) ("[N]either arrest nor incarceration automatically triggers withdrawal from a conspiracy.").  This approach makes sense given the unfortunate reality that co-conspirators can (and do) continue to participate in conspiracies from prison through a variety of measures—both active and passive.  *See United States v. Bowie*, 618 F.3d 802, 813 (8th Cir. 2010); *United States v. Zamuido-Orosco*, 405 F. App'x 83, 84-85 (8th Cir. 2010); United *States v. Panebianco*, 543 F.2d 447, 454 n.5 (2d Cir. 1976).

None of this is to suggest that Defendants' incarceration is *irrelevant* to withdrawal or that Defendants are prohibited from raising their withdrawal-through-incarceration defense at trial. To prevail, however, Defendants must prove "something more than [mere] incarceration during the limitations period." *Johnson*, 737 F.3d at 526. For the time being, Defendants have failed to do so. Defendants do not claim, nor have they proved, that they confessed to law enforcement, advised their co-conspirators that they were abandoning the criminal enterprise, or took any other "affirmative action . . . to disavow or defeat the purpose of the conspiracy." *Smith*, 133 S. Ct. at 720 (quotation omitted). Accordingly, for purposes of these motions, the continuing conspiracy was not complete, and the limitations period did not begin to run upon Defendants' arrest and incarceration. Because Count One from the Superseding Indictment alleged that the RICO conspiracy continued in force until June 24, 2014, the Government's prosecution of that count is not time-barred.

### B. Pre-Indictment Delay and Due Process Considerations

Defendants also argue that the indictments should be dismissed in their entirety due to an alleged unconstitutional delay in bringing charges.[5] An indictment filed within the time constraints imposed by the relevant statute of limitations, as here, may nevertheless violate due process where the delay in bringing charges "caused substantial prejudice" to the defendant's right to a fair trial and "was an intentional device to gain tactical advantage over the accused." *Rogers*, 118 F.3d at 474-75 (quotation omitted). Defendants' motions fall short under this two-part test because, with the possible exception of Jonathan Holt, they have not shown substantial prejudice. Moreover, none of the defendants has shown intentional, bad-faith delay.

---

[5] Lance A. Green (Doc. 635), Christopher A. Harris (Doc. 629), Thomas E. Coates (Doc. 491), and Jonathan Holt (Doc. 435), all moved to dismiss on the grounds of pre-indictment delay while providing reasoned arguments in support. Robert B. Ledbetter (Doc. 499), Allen L. Wright (Docs. 501 and 638), Robert L. Wilson III (Doc. 642), and Ishmael Bowers (Doc. 643), moved to join their co-defendants' pleadings. The Court hereby grants those motions to join and will construe them in like manner.

*1. Defendants Have Not Shown Substantial Prejudice Stemming from the Delay.*

To prevail on their due process claims, Defendants must first show that any delay between the commission of the crimes and the filing of the indictments caused "substantial prejudice" to their right to a fair trial. *Id.* at 475. Defendants' arguments in support of substantial prejudice fall under three broad headings: (1) *presumed* prejudice due to the length of the delay; (2) prejudice stemming from the difficulty of locating witnesses, the inability of witnesses to recall adequately the events in question, and the loss or destruction of exculpatory evidence; and (3) with respect to Jonathan Holt, prejudice that resulted from the loss of certain procedural protections contemplated by the Federal Juvenile Delinquency Act ("FJDA"), codified at 18 U.S.C. § 5031 *et seq.* The Court will address each argument in turn.

### a. Presumed Prejudice

Defendants argue that the Court should presume prejudice due to the length of the pre-indictment delay which, in some instances, approached nine years. Defendants rely on language from *Doggett v. United States*, 505 U.S. 647 (1992), where the Supreme Court held that "excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Id.* at 655. *Doggett*, however, involved a claim under the Speedy Trial Clause of the Sixth Amendment for *post*-indictment delay—not a due process claim under the Fifth Amendment for *pre*-indictment delay. *Id.* at 651. Despite any logical import that *Doggett* may provide, the Sixth Circuit and other courts have rejected attempts to apply a presumption of prejudice to due process claims. *United States v. Schaffer*, 586 F.3d 414, 425 (6th Cir. 2009). Put simply, "[t]he Due Process Clause has never been interpreted so as to impose a presumption of prejudice in the event of lengthy pre-indictment delay," and doing so here would "directly contradict[] . . . Supreme Court precedent." *Id.* (quotation omitted).

### b. Prejudice Stemming from the Loss of Testimonial or Documentary Evidence

Defendants next argue that they will suffer substantial prejudice at trial because "witness memories have faded, the defense may not be able to locate witnesses altogether, and exculpatory evidence may have been lost or destroyed." (Doc. 629; *see also* Doc. 435 (alleging that five-year delay in bringing charges against Holt "has resulted in the loss, intimidation and incarceration of the majority of individuals who would have had knowledge of the incidents giving rise to these charges")). Coates argues, without explanation, that he "cannot ascertain what witnesses and documents might be relevant" due to the passage of time. (Doc. 491). Several Defendants claim that witnesses who *could* have testified on their behalf "have died in between the time of the alleged offenses and the filing of the indictment," without specifying *who* those witnesses were or *what* testimony they would have provided. (Docs. 629 and 635). Finally, Green and Harris note that the Government has acknowledged the loss or destruction of certain evidence, including evidence regarding the charges they face. (Docs. 629 and 635).

The trouble with these arguments, at least at this stage of the proceedings, lies in their generalized and speculative nature. The Supreme Court has made clear that defendants cannot rely solely on the "possibility of prejudice" that accompanies any extended delay, including fears "that memories will dim, [that] witnesses [will] become inaccessible, and [that] evidence [will] be lost." *Marion*, 404 U.S. at 326. "These possibilities are not in themselves enough to demonstrate that [defendants] cannot receive a fair trial." *Id.* To prevail, Defendants must do more than lodge "general allegations" of perceived prejudice. *Schaffer*, 586 F.3d at 424. As such, the bulk of Defendants' prejudice argument falls short, including Defendants' generalized allegations that "witness memories have faded, the defense may not be able to locate witnesses altogether, and exculpatory evidence may have been lost or destroyed." (Docs. 629 and 635).

18

To be sure, substantial prejudice "is commonly demonstrated by the loss of documentary evidence or the unavailability of a key witness."  *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999).  But to demonstrate substantial prejudice from a "missing witness," defendants must identify which witnesses would have testified; describe what testimony they would have offered; and explain why that testimony was exculpatory and otherwise unavailable from other sources.  *See, e.g.*, *Rogers*, 118 F.3d at 475; *United States v. Vaughn*, 444 F. App'x 875, 878-79 (6th Cir. 2011); *United States v. Duncan*, 763 F.2d 220, 222 (6th Cir. 1985).  Here, Defendants have failed to identify a single witness who is no longer available (or willing) to testify.  Nor, for that matter, have Defendants described how such testimony is exculpatory and otherwise unavailable.  Under the circumstances, Defendants' missing-witnesses argument fails.  *Rogers*, 118 F.3d at 475; *see also United States v. Norris*, 501 F. Supp. 2d 1092, 1098 (S.D. Ohio 2007) (finding no due process violation where court was "left to guess as to how the deceased witnesses would have provided Defendant with exculpatory evidence").

Defendants make a closer showing of substantial prejudice stemming from the loss or destruction of potentially exculpatory evidence.  The Government has acknowledged that, due to the passage of time and the preexisting policies of the individual law enforcement agencies investigating this matter, some property has been destroyed or otherwise disposed of, including a limited number of firearms, narcotics, and shell casings.  (Doc. 601).  Defendants, however, have not claimed, let alone shown, "that the evidence lost would be both material and favorable to [their] defense."  *See Vaughn*, 444 F. App'x at 879 (quotation omitted).  Where, as here, defendants fail to demonstrate that the destruction of evidence will substantially prejudice them, their due process claims fail as well.  *Id.*; *see also United States v. Couch*, 822 F. Supp. 457, 462 (S.D. Ohio 1993) (finding lost-evidence claim "speculative at best").

19

*c.  Prejudice from Unavailability of the FJDA*

Jonathan Holt argues that he suffered substantial prejudice stemming from the Government's five-year delay in bringing charges because that delay deprived him of certain procedural protections afforded to juveniles under the Federal Juvenile Delinquency Act. (Doc. 435).  Holt argues that, because he was seventeen when the crimes in question occurred, he could have invoked the protections of the FJDA so long as the criminal proceedings against him began before he turned twenty-one.  *See* 18 U.S.C. § 5031; *United States v. Hoo*, 825 F.2d 667, 669-670 (2d Cir. 1987) (explaining applicability and protections of the FJDA).  Holt asserts that the Government deprived him of those protections by waiting until he aged-out to bring charges.

The Court is sensitive to Holt's argument.  The FJDA, when applicable, provides many safeguards to defendants facing juvenile delinquency proceedings in lieu of a criminal prosecution—too many to name here.  *See* 18 U.S.C. §§ 5031-5042; *Hoo*, 825 F.2d at 669 n.1. The FJDA, however, does not guarantee every defendant the right to juvenile delinquency proceedings.  18 U.S.C. § 5032.  Rather, the FJDA merely entitles defendants to "a judicial determination as to whether juvenile proceedings should be required."  *See Hoo*, 825 F.2d at 670. The Court need not resolve whether a defendant can show substantial prejudice for purposes of pre-indictment delay *assuming* the defendant were otherwise entitled to juvenile delinquency proceedings under the FJDA and further *assuming* the government's delay unilaterally deprived the defendant of the protections guaranteed by those proceedings.  *See id.* at 671 (rejecting claim of pre-indictment delay based solely on lack of improper prosecutorial motive); *see also United States v. Gay*, No. 14-20119, 2015 WL 3579880, at *3 (E.D. Mich. June 5, 2015) (same). Without deciding these matters, Holt's claim fails because he has not demonstrated that the Government intentionally delayed bringing charges against him for improper purposes.

2. *Defendants Have Not Shown that the Government Delayed to Gain a Tactical Advantage.*

Defendants' due process claims fail for an independent reason: Defendants have not shown that the Government intentionally delayed bringing charges to gain a tactical advantage over the accused. *Schaffer*, 586 F.3d at 425-26. Where, as here, the delay in bringing charges stems from careful and comprehensive investigatory efforts, due process is satisfied. *See, e.g.*, *Lovasco*, 431 U.S. at 796; *Rogers*, 118 F.3d at 476.

A "defendant's Fifth Amendment due process rights are generally not implicated where the government offers a valid reason for the delay." *Brown*, 959 F.2d at 66. Moreover, it is well-settled that "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might be somewhat prejudiced by the lapse of time." *Lovasco*, 431 U.S. at 796; *see also Rogers*, 118 F.3d at 476 (affirming denial of motion to dismiss where delay was explained by "development of a thorough and fair investigation and the complexity of the case"). Here, the Government has explained its delay as "a herculean investigatory effort" to uncover a massive RICO conspiracy—one that spanned nearly a decade and that included the investigation of fourteen "unsolved, cold-case homicides." (Doc. 658). The Government notes that the FBI's investigation of the alleged conspiracy did not begin in earnest until 2012 and initially resulted in a series of drug-related prosecutions in late 2013. (*Id.*) Only then did the Government obtain information and cooperating witnesses that, combined with a renewed focus on the Short North Posse, resulted in the filing of the original Indictment in 2014. (*Id.*) Given the magnitude and complexity of this case, the Court has no reason to doubt the Government's representations and finds its proffered reasons for delay valid. *See Hoo*, 825 F.2d at 671 (concluding that delay "was due entirely to legitimate considerations, such as the need to obtain evidence and the difficulties that necessarily arise in a complex RICO investigation").

Defendants offer two rejoinders.  *First*, Defendants argue that the Government should have brought charges several years ago, when it initially learned of incriminating evidence. Prosecutors, however, have no duty to file criminal charges as soon as probable cause exists. *Lovasco*, 431 U.S. at 791.  Indeed, the Constitution does not require prosecutors to file charges upon assembling enough evidence to prove guilt beyond a reasonable doubt.  *Id.* at 792; *see also United States v. Greene*, 737 F.2d 572, 575 (6th Cir. 1984).  Several justifications compel this result, including concerns (as relevant here) that "an immediate arrest or indictment would impair the prosecutor's ability to continue his investigation" into criminal transactions that involve more than one person or more than one illegal act.  *Lovasco*, 431 U.S. at 792-93.  Put simply, prosecutors have "wide latitude to determine when to seek an indictment," particularly where, as here, a case involves multiple defendants, *United States v. Sherlock*, 962 F.2d 1349, 1355 (9th Cir. 1989), or multiple criminal acts, *United States v. Jeffries*, 43 F. App'x 882, 884 (6th Cir. 2002) (finding no improper motive for delay where government continued investigation to link defendant to other similar crimes).

*Second*, Defendants allege bad-faith delay stemming from the Government's ability to "stack" additional charges against them.  Defendants, though, offer no support for this argument beyond their own conclusory allegations.  In the absence of "proof that the delay was a deliberate ploy by the Government to gain a tactical advantage," such conclusory allegations fall short.  *See Brown*, 498 F.3d at 528; *see also United States v. Baltimore*, 482 F. App'x 977, 982 (6th Cir. 2012) (affirming denial of motion to dismiss where defendant "offered nothing to rebut the government's assertion . . . that [it] continued to investigate and build its case until indictment"); *Couch*, 822 F. Supp. at 462 (same; denying motion to dismiss where defendants "offered nothing in the way of evidence" to rebut government's proffered investigatory delay).

All told, Defendants have failed to satisfy their "heavy burden" of demonstrating unconstitutional pre-indictment delay. *See Wright*, 343 F.3d at 860 (quotation omitted); *Rogers*, 118 F.3d at 477 n.10. Defendants request an evidentiary hearing on this issue to develop the record further. The Court finds such a hearing unnecessary given the speculative and conclusory nature of Defendants' arguments—both as to substantial prejudice and as to intentional, bad-faith delay. *See United States v. Shafer*, 384 F. Supp. 480, 483 (N.D. Ohio 1974) (denying evidentiary hearing where defendants failed to support their motion to dismiss with specific allegations of actual prejudice). Defendants, of course, may renew their motions "if there is a sufficient showing of [substantial] prejudice at trial." *Id.*; *see also United States v. Glynn*, No. 3:13-00059, 2015 WL 2125082, at *11 n.3 (M.D. Tenn. May 6, 2015) (denying motion to dismiss based on pre-indictment delay while permitting defendant to "re-assert[] his request after trial"); *cf. United States v. Piasecki*, 969 F.2d 494, 502 (7th Cir. 1992) (endorsing district court's decision to take motion to dismiss "under advisement" until trial concluded).

## IV. CONCLUSION

For these reasons, Defendants' motions to dismiss in Case Numbers 2:14-cr-127 (Docs. 435, 491, 495, 627, 628, 629, 632, 635, and 636) and 2:15-cr-080 (Docs. 17, 18, and 21) are **DENIED**. Defendants' motions to join in their co-defendants' motions to dismiss (Docs. 499, 501, 638, 642, and 643) are **GRANTED but MOOT** to the extent they allege violations of the statutes of limitation or unconstitutional pre-indictment delay.

**IT IS SO ORDERED.**

       **s/ Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: August 12, 2015**