IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 2:15-CR-080 |
| Plaintiff, | : | Case No. 2:14-CR-127 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| ROBERT B. LEDBETTER, *et al.* | : | |
| | : | |
| Defendants. | : | |

## OPINION & ORDER

This matter comes before the Court on Defendants' various requests for discovery.[1] Due to the Government's "open-file policy" in this case—whereby the Government has provided Defendants external hard drives containing all of the documents and recordings within its possession (except for Jencks Act material), and has permitted defense counsel to view any physical evidence within the Government's possession—most of Defendants' discovery requests have been fulfilled and now are moot. Accordingly, the Court issues this plenary discovery order to resolve many of Defendants' pending motions.

## I.  BACKGROUND

On June 23, 2014, a federal grand jury returned a twenty-five count Indictment in Case Number 2:14-cr-127, charging seventeen defendants with a number of violations under federal racketeering and narcotics laws connected to the defendants' alleged involvement in the Short North Posse, an alleged criminal organization in the Short North area of Columbus, Ohio. (Doc. 14). Defendants filed an initial wave of discovery requests during the summer of 2014, shortly after return of the original Indictment.

---

[1] Defendants have filed various discovery notices and motions in this case. Due to the number of defendants and the nature of this case, many of these filings are exact duplicates of one another or seek to adopt a particular co-defendant's motion or motions.

1

On October 20, 2014, the grand jury returned a Superseding Indictment adding three new defendants and thirteen counts, bringing the total to twenty defendants and thirty-eight counts. (Doc. 300).  The three new defendants were Andre M. Brown, Johnathan Holt, and Christopher V. Wharton.  Shortly after return of the Superseding Indictment, the Court instructed Defendants to renew any unresolved requests for discovery.  Accordingly, Defendants filed a second wave of discovery requests during late 2014 and early 2015.

On April 2, 2015, the grand jury returned another Indictment that was later assigned as a separate case—Case Number 2:15-cr-080.  The 2015 Indictment named four defendants (Robert B. Ledbetter, Christopher A. Harris, Rashad A. Liston, and Deounte Ussury), all of whom were charged previously in the Superseding Indictment in Case Number 2:14-cr-127.  The 2015 Indictment also included two new counts: one for murder in aid of racketeering and one for murder through the use of a firearm during and in relation to a drug trafficking crime—both related to the murder of Marschell Brumfield, Jr. in 2007.  Due to the similarity of the charges in both cases and the fact that all four defendants also were charged in Count One of the Superseding Indictment for their role in the RICO conspiracy, this Court joined Case Number 2:15-cr-080 with Case Number 2:14-cr-127 under Federal Rule of Criminal Procedure 13. (Doc. 595).

Under the Superseding Indictment in Case Number 2:14-cr-127 and the 2015 Indictment in Case Number 2:15-cr-080, the defendants collectively face a total of forty counts.  Although fourteen defendants initially faced a potential capital prosecution, the Government has informed the Court and the defendants of its intent not to seek the death penalty for any of the defendants. (Doc. 563).  The defendants are scheduled to stand trial in three groupings, with the first trial to commence on April 4, 2016.  (Doc. 727).

Throughout this case, the Government has maintained an "open-file policy" for discovery.  Under that policy, the Government provided the defense teams external hard drives containing copies of all documents, photographs, audio and video recordings, and other investigative materials within the Government's possession—organized by substantive counts and overt acts—with the exception of civilian witness statements and other Jencks Act material.  (*See* Docs. 161 and 440).  The external hard drives also contain supplemental files relating to intercepted phone calls, phone records, car rental records, laboratory reports, and the like.  The Government and the defense teams conducted tutorials for how to access these materials, and the Court also appointed a "Coordinating Discovery Attorney" to assist defense counsel "in culling though the massive amounts of discovery the Government has furnished."  (*See* Doc. 239).  Consistent with its ongoing discovery obligations, the Government has supplemented the information provided on the external hard drives on three occasions.  (*See* Doc. 728).  In addition to the electronic discovery just described, the Government also has made all physical evidence available to defense counsel for their inspection at defense counsel's convenience.  (*Id.*).

The Government stated that it "intends to use all of this evidence at trial" in addition to "the testimony of the custodian[s] of records, experts who prepared the reports, agents involved in the investigations, and witnesses to events in question."  (*See* Doc. 161; *see also* Doc. 440).  The Government also intends to "introduce all evidence relevant to prove the existence of the [RICO] enterprise alleged . . . as well as all evidence pertaining to each defendants' involvement in the enterprise."  (Doc. 161; *see also* Doc. 440).  Accordingly, the Government "does not intend to introduce any Rule 404(b) evidence at trial."  (Doc. 161; *see also* Doc. 440).[2]

---

[2] The Government has indicated that "[i]f Rule 404(b) evidence becomes relevant during the course of the trial[s], counsel for the United States will notify the Court and defense counsel before attempting to introduce that evidence . . . . [which] will allow counsel the opportunity to state any objections . . . ." (Doc. 161; *see also* Doc. 440).

## II.  ANALYSIS

Defendants maintain nearly 100 pending discovery requests on the Court's docket, many of which duplicate one another, seek to join in other motions for the sake of judicial efficiency, or have been responded to and thus fulfilled under the Government's open-file policy.  The Court conducted an all-counsel status conference on October 8, 2015, to determine the status of discovery and to resolve many of these pending requests.  That resolution follows.

### A.  Renewed or Duplicate Discovery Requests

As instructed, Defendants renewed many of their pending discovery requests after return of the Superseding Indictment in October 2014.  Thus, many of Defendants' requests now duplicate (word-for-word) their earlier requests for discovery.  To streamline the discovery process and to lend clarity to the docket, the Court will resolve as moot all discovery requests that subsequently were renewed in identical fashion.

### B.  Discovery Requests that Seek to Join in Other Motions

Due to the number of defendants and the overlapping nature of the discovery in this case, many defendants—in the interest of judicial efficiency—opted not to file (or renew) individual discovery requests for every class of documents or information sought.  Instead, those defendants moved to join or adopt certain discovery motions from their co-defendants.  To streamline discovery and to lend clarity to the docket, the Court will grant these motions *without commenting on the merits of the underlying motions to which the movants seek to join*.  Instead, when the Court rules on the underlying motions, those rulings will govern all other defendants. For example, if the Court finds that one defendant's motion for disclosure of the Government's intent to use evidence at trial is moot in light of the Government's discovery responses, then that issue remains moot for all other defendants who joined in the underlying motion for disclosure.

4

**C.  Discovery Requests that the Government has Fulfilled**

Under the Government's open-file policy, most of Defendants' requests for discovery have been fulfilled.  Indeed, during the recent all-counsel status conference, the Court individually polled defense counsel, by motion, and asked whether the Government had responded to and fulfilled any pending discovery requests.  Defense counsel responded that the Government *had* fulfilled many of their requests entirely, with the exception of Jencks Act material (which the Government will provide closer to trial under the Court's scheduling orders), and with the caveat that the Government remains duty-bound to supplement seasonably its discovery productions should it obtain any new, responsive evidence.  Accordingly, under the guidelines discussed above in Sections II.A-II.C, the Court will resolve Defendants' pending discovery requests as follows:

1.  Robert B. Ledbetter

Ledbetter renewed Doc. 278 (filed on 10/08/2014) at Doc. 469 (filed on 01/13/2015). Doc. 278 therefore is moot.  Ledbetter moved to join in various discovery requests at Docs. 240, 469, and 499.  The Court **GRANTS** those motions to join in his co-defendants' discovery requests.  Finally, during the October 8, 2015 status conference, Ledbetter's counsel responded that Doc. 279, which requested a presentence investigation report for death-penalty mitigation purposes, is moot in light of the Government's notice of intent not to seek the death penalty.  The Court agrees; Doc. 279 is **MOOT**.

2.  Lance A. Green

Green moved to join in various discovery requests at Doc. 240.  The Court **GRANTS** Green's motion to join in his co-defendants' discovery requests.

### 3.  Allen L. Wright

Wright moved to join in various discovery requests at Docs. 240 and 501.  The Court **GRANTS** those motions to join in his co-defendants' discovery requests.  Moreover, during the October 8, 2015 status conference, Wright's counsel responded that the Government has fulfilled the discovery requests contained in Docs. 135, 138, 139, 140, 141, 142, 143, and 144.  Those motions therefore are **MOOT** in light of the Government's productions.

### 4.  Tysin L. Gordon

Gordon moved to join in various discovery requests at Docs. 240 and 473.  The Court **GRANTS** those motions to join in his co-defendants' discovery requests.  Likewise, during the October 8, 2015 status conference, Gordon's counsel responded that the Government has fulfilled the discovery requests contained in Doc. 337.  Therefore, the Court finds that motion **MOOT** in light of the Government's productions.

### 5.  Christopher A. Harris

Harris renewed Docs. 128 and 129 (filed on 07/15/2014) at Docs. 476 and 477, respectively (filed on 01/14/2015).  Harris renewed Doc. 259 (filed on 09/25/2014) at Doc. 479 (filed on 01/14/2015).  Finally, Harris renewed Doc. 260 (filed on 09/25/2014) at Doc. 478 (filed on 01/14/2015).  Docs. 128, 129, 259, and 260 therefore are **MOOT**.  Harris also moved to join in various discovery requests at Docs. 240, 258, and 498.  The Court **GRANTS** those motions to join in his co-defendants' discovery requests.  Finally, during the October 8, 2015 status conference, Harris's counsel responded that the Government has fulfilled the discovery requests contained in Docs. 476, 477 and 478.  The Court finds these motions **MOOT** in light of the Government's productions.

### 6. Robert Wilson III

Wilson III renewed Docs. 108, 109, and 110 (filed on 07/14/2014) at Docs. 432, 433, and 434, respectively (filed on 12/29/2014).  Docs. 108, 109, and 110 therefore are **MOOT**.  Wilson III also moved to join in various discovery requests at Doc. 240.  The Court **GRANTS** Wilson III's motion to join in his co-defendants' discovery requests.  Finally, during the October 8, 2015 status conference, Wilson III's counsel responded that the Government has fulfilled the discovery requests contained in Docs. 432, 433, and 434.  The Court finds these motions **MOOT** in light of the Government's productions.

### 7. Rashad A. Liston

Liston renewed Doc. 134 (filed on 07/21/2014) at Doc. 441 (filed on 01/07/2015).  Doc. 134 therefore is **MOOT**.  Liston also moved to join in various discovery requests at Docs. 240 and 442.  The Court **GRANTS** those motions to join in his co-defendants' discovery requests.  During the October 8, 2015 status conference, Liston's counsel responded that the Government has fulfilled the discovery requests contained in Doc. 441.  That motion is **MOOT**.

### 8. Deounte Ussury

Ussury renewed Doc. 199 (filed on 08/13/2014) at Doc. 480 (filed on 01/15/2015).  Ussury renewed Doc. 200 (filed on 08/13/2014) at Doc. 483 (filed on 01/15/2015).  Finally, Ussury renewed Doc. 255 (filed on 09/23/2014) at Doc. 482 (filed on 01/15/2015).  Docs. 199, 200, and 255 therefore are **MOOT**.  Ussury also moved to join in various discovery requests at Docs. 240, 482, and 496.  The Court **GRANTS** those motions to join in his co-defendants' discovery requests.  Finally, during the October 8, 2015 status conference, Ussury's counsel responded that the Government has fulfilled the discovery requests contained in Docs. 480, 481, and 483.  Those motions therefore are **MOOT**.

### 9. Thomas E. Coates

Coates renewed Docs. 188, 189, and 190 (filed on 08/06/2014) at Docs. 405, 406, and 408, respectively (filed on 12/09/2014). Coates renewed Doc. 257 (filed on 09/25/2014) at Doc. 407 (filed on 12/09/2014). Docs. 188, 189, 190, and 257 therefore are **MOOT**. Coates also moved to join in various discovery requests at Docs. 240 and 407. The Court **GRANTS** those motions to join in his co-defendants' discovery requests. Finally, during the October 8, 2015 status conference, Coates's counsel responded that the Government has fulfilled the discovery requests contained in Docs. 405, 406, 408, 494, and 593. The Court finds these motions **MOOT** in light of the Government's productions.

### 10. Ishmael Bowers

Bowers renewed Doc. 149 (filed on 07/23/2014) at Doc. 422 (filed on 12/19/2014). Bowers renewed Docs. 150 and 152 (filed on 07/24/2014) at Docs. 422 and 418, respectively (filed on 12/19/2014). Bowers likewise renewed Doc. 220 (filed on 08/21/2014) at Doc. 421 (filed on 12/19/2014). Bowers inadvertently filed duplicate motions at Docs. 419 and 422 (both filed on 12/19/2014). Finally, Bowers filed an incomplete version of Doc. 506 (filed on 01/20/2015) a few days earlier at Doc. 504 (filed on 01/16/2015). Docs. 149, 150, 152, 220, 419, and 504 therefore are **MOOT**. Bowers also moved to join in various discovery requests at Docs. 240 and 506. The Court **GRANTS** those motions to join in his co-defendants' discovery requests. Finally, during the October 8, 2015 status conference, Bowers's counsel responded that the Government has fulfilled the discovery requests contained in Docs. 418, 420, 421, and 422. The Court finds these motions **MOOT** in light of the Government's productions.

### 11.  Joseph Hill

Hill renewed Doc. 193 (filed on 08/11/2014) at Doc. 470 (filed on 01/13/2015). Doc. 193 therefore is **MOOT**.  Hill also moved to join in various discovery requests at Docs. 240 and 471.  The Court **GRANTS** those motions to join in his co-defendants' discovery requests.  Finally, during the October 8, 2015 status conference, Hill's counsel responded that the Government has fulfilled the discovery requests contained in Doc. 470.  The Court finds this motion **MOOT** in light of the Government's productions.

### 12.  Freddie K. Johnson

Johnson moved to join in various discovery requests at Docs. 240 and 559.  The Court **GRANTS** those motions to join in his co-defendants' discovery requests.  Moreover, during the October 8, 2015 status conference, Johnson's counsel responded that the Government has fulfilled the discovery requests contained in Doc. 341.  The Court finds this motion **MOOT** in light of the Government's productions.

### 13.  DeShawn Smith

Smith moved to join in various discovery requests at Docs. 240 and 487.  The Court **GRANTS** those motions to join in his co-defendants' discovery requests.  Moreover, during the October 8, 2015 status conference, Smith's counsel responded that the Government has fulfilled the discovery requests contained in Docs. 195, 485, and 486.  Those motions are **MOOT**.

### 14.  Lance Reynolds

Reynolds moved to join in various discovery requests at Docs. 240 and 688.  The Court **GRANTS** those motions to join in his co-defendants' discovery requests.  Moreover, during the October 8, 2015 status conference, Reynolds's counsel responded that the Government has fulfilled the discovery requests contained in Doc. 326.  That motion therefore is **MOOT**.

### 15.  Rastaman Wilson

Wilson renewed Docs. 147 and 148 (filed on 07/23/2014) at Docs. 474 and 475, respectively (filed on 01/14/2015).  Docs. 147 and 148 therefore are **MOOT**.  Wilson also moved to join in various discovery requests at Doc. 240.  The Court **GRANTS** Wilson's motion to join in his co-defendants' discovery requests.  Finally, during the October 8, 2015 status conference, Wilson's counsel responded that the Government has fulfilled the discovery requests contained in Docs. 474 and 475.  Those motions therefore are **MOOT**.

### 16.  Clifford L. Robinson

Robinson renewed Docs. 156, 158, 159, and 160 (filed on 07/24/2014) at Docs. 386, 388, 389, and 391, respectively (filed on 12/05/2014).  Docs. 156, 158, 159, and 160 therefore are **MOOT**.  Robinson also moved to join in various discovery requests at Doc. 240.  The Court **GRANTS** Robinson's motion to join in his co-defendants' discovery requests.  During the October 8, 2015 status conference, Robinson's counsel responded that the Government has fulfilled the discovery requests contained in Docs. 386, 388, 389, and 391.  Those motions therefore are **MOOT**.

### 17.  Troy A. Patterson

Patterson moved to join in various discovery requests at Doc. 240.  The Court **GRANTS** Patterson's motion to join in his co-defendants' discovery requests.

### 18.  Johnathan Holt

During the October 8, 2015 status conference, Holt's counsel responded that the Government has fulfilled the discovery requests contained in Docs. 346, 360, and 415.  The Court finds these motions **MOOT** in light of the Government's productions.

19.  Christopher V. Wharton

During the October 8, 2015 status conference, Wharton's counsel responded that the Government has fulfilled the discovery requests contained in Doc. 333.  The Court finds this motion **MOOT** in light of the Government's productions.

### D.  *Brady*, *Giglio*, and Jencks Act Materials

During the Court's October 8, 2015 status conference, counsel for several defendants raised the issues of disclosure of exculpatory material under *Brady v. Maryland*, 373 U.S. 83 (1963); impeachment material under *Giglio v. United States*, 405 U.S. 150 (1972); and accelerated production of Jencks Act material under 18 U.S.C. § 3500.  This discussion first arose when the Court polled Wright's counsel regarding the status of the Government's response to Doc. 136, in which Wright requested the pretrial disclosure of "all statements by alleged co-conspirator(s) and/or co-defendants."  The discussion soon expanded to cover *Brady*, *Giglio*, and Jencks Act materials more broadly.  In sum, counsel for a number of defendants expressed concern over their ability to prepare for trial in the absence of these materials.

Several defendants requested production of all exculpatory, material evidence under *Brady*, as well as all information that could arguably be used to impeach any government witness under *Giglio*.  The Court finds these motions **MOOT**.  In its response to these motions, and during the status conference, the Government assured Defendants and the Court that all information that qualifies as *Brady* or *Giglio* material already has been provided or will be provided in connection with the Government's Jencks Act disclosures.  The Government further represented that it is aware of its discovery obligations under *Brady* and *Giglio* and will continue to comply with these obligations in the advance of trial.  These representations suffice.

As the Sixth Circuit noted, "the government typically is the sole judge of what evidence in its possession is subject to disclosure" under *Brady*. *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988); *accord Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) (stating that a prosecutor's decision on disclosure is final unless defense counsel learns exculpatory evidence was withheld and brings it to the court's attention); *United States v. Hale*, 106 F.3d 402, 1997 WL 34697, at *2 (6th Cir. 1997) (unpublished table decision) (holding that under *Brady*, the government "must be assigned the primary responsibility of gauging whether [undisclosed evidence] constitutes evidence favorable to the accused and is therefore discoverable").

Absent any indication of misconduct, the Court is entitled to rely on the Government's representations regarding whether evidence in its possession is subject to disclosure under *Brady* and *Giglio*. *See, e.g.*, *United States v. Carmichael*, 232 F.3d 510, 516-17 (6th Cir. 2000) ("[B]ecause prosecutors are officers of the court, district courts may take them at their word when they inform the court that they have reviewed specified . . . documents and that those documents do not contain material subject to compulsory disclosure under *Brady*."); *United States v. Hernandez*, 31 F.3d 354, 361 (6th Cir. 1994) (holding that, in the absence of "some indication of misconduct" by the government, the district court is not required to conduct an *in camera* review to verify the government's assertion regarding disclosure of *Brady* materials).

Furthermore, when potentially exculpatory evidence falls "within the ambit of the Jencks Act, then the express provisions of the Jencks Act control discovery of that kind of evidence." *Presser*, 844 F.2d at 1283; *see also United States v. Bencs*, 28 F.3d 555, 561 (6th Cir. 1994) ("When *Brady* material sought by a defendant is covered by the Jencks Act, 18 U.S.C. § 3500, the terms of that Act govern the timing of the government's disclosure."); *United States v. Brazil*, 395 F. App'x 205, 215 (6th Cir. 2010) (same).

Under this Court's scheduling order, which the Government and defense counsel jointly proposed on March 6, 2015, the disclosure of Jencks Act material will occur as follows:

> [T]he government will disclose the volume of *Jencks* material to the district court 90 days before [each] scheduled trial date. The majority of *Jencks* material will be provided to defense counsel six weeks before your trial date with the remaining sensitive *Jencks* material being provided two weeks before trial. Motions in limine prompted by the production of *Jencks* material must be filed 21 days after the *Jencks* material is produced or as soon as practicable[.]

(Doc. 531).

The Court finds that this schedule—which was designed to ensure that the trials will proceed smoothly and without the need for long breaks for defense counsel to review this material after each witness testifies—affords adequate protection both to the defendants' ability to prepare for trial and to the safety of government witnesses. *See, e.g.*, *United States v. Minsky*, 963 F.2d 870, 876 (6th Cir. 1992) (noting that while the Jencks Act permits the Government to wait for disclosure until after the witness testifies, "the better practice—and that followed in most federal courts today"—encourages the Government to provide information earlier in appropriate cases to prevent delay at trial); *United States v. Musgrave*, No. 3:11-cr-183, 2012 WL 3686496, at *2 & n.5 (S.D. Ohio Aug. 27, 2012) (requiring the Government to alert the court "well before trial" should the Jencks material be "voluminous or highly technical . . . so that [the court] may determine if the material should be produced at an earlier date").

Thus, as there is no evidence of prosecutorial misconduct, the Court will rely on the Government's representations that it has complied, and will continue to comply, with *Brady* and *Giglio*. Under this framework and the Government's representations that it has disclosed all *Brady* and *Giglio* material not subject to the Jencks Act, the Court finds Defendants' motions for exculpatory evidence **MOOT**. Given the Court's already accelerated schedule for disclosure of Jencks Act material, the Court **DENIES** any requests for *further* acceleration.

The Court warns, however, that if the Government fails to comply with its obligations under *Brady* and *Giglio*, "it acts at its own peril." *See Presser*, 844 F.2d at 1282. Moreover, should the Government have questions over whether certain evidence constitutes *Brady* material, the Government may submit that material to the Court for *in camera* review. *See Application of Storer Commc'ns, Inc.*, 828 F.2d 330, 334 (6th Cir. 1987) (noting that a prosecutor may submit possible *Brady* materials for *in camera* review by the trial court to determine whether disclosure is required).

### E.  Disclosure and Admissibility of Co-Conspirators' Statements

Wright (Doc. 136), Harris (Doc. 479), and other defendants who joined in their motions requested that the Court: (1) compel pretrial disclosure of all statements from co-conspirators; and (2) hold an evidentiary hearing to determine whether any alleged co-conspirator statements are admissible under Federal Rule of Evidence 802(d)(2)(E). In the alternative, Defendants request that the Court order the Government to refrain from eliciting or referring to any alleged co-conspirator statements until the Court determines the admissibility of such statements at trial.

The Sixth Circuit has found that discovery afforded under Federal Rule of Criminal Procedure 16 is limited to the categories of evidence expressly referred to in the Rule. *Presser*, 844 F.2d at 1285. Therefore, Rule 16 does not require pretrial disclosure of a co-conspirator's statements. *See id.* (citing *United States v. Roberts*, 811 F.2d 257, 258-59 (4th Cir. 1987) (en banc)); *United States v. Boykins*, 915 F.2d 1573, 1990 WL 143559, at *7 (6th Cir. 1990) (unpublished table decision) (holding that "co-conspirator statements do not fall within the ambit of Rule 16(a)(1)(A)" as a defendant's statement and therefore were not discoverable pretrial); *United States v. Kelsor*, No. 2:08-cr-81-5, 2009 WL 1850177, at *4 (S.D. Ohio June 25, 2009) (denying similar request for statements from co-conspirators in advance of trial).

Defendants cite out-of-circuit authority to support their position. *See United States v. Thevis*, 84 F.R.D. 47 (N.D. Ga. 1979) (holding that co-conspirator's statements were discoverable under Rule 16 as statements imputed to the defendant himself); *United States v. Agnello*, 367 F. Supp. 444 (E.D.N.Y. 1973) (same). As commentators have noted, however, courts remain split on the discoverability of co-conspirator statements under Rule 16. *See* 2 Charles Alan Wright et al., *Federal Practice and Procedure*, § 253 (4th ed. 2015) ("Some courts give the rule a broad reading to find that statements of coconspirators made during the course of and in furtherance of a conspiracy of which they and the defendant were members should be deemed statements of the defendant and discoverable as such, but other courts reject that analysis."). This Court may not ignore the law of the Sixth Circuit on this subject, which has denied pretrial disclosure of co-conspirator statements. Moreover, because the Government already has disclosed statements from all *indicted* co-conspirators, the potential for prejudice is greatly reduced. Accordingly, the Court **DENIES** Defendants' requests for pretrial discovery of all co-conspirator statements. *See United States v. Happ*, No. CR2-06-129(8), 2008 WL 5101214, at *6 (S.D. Ohio Nov. 25, 2008) (Marbley, J.).

Wright, Harris, and other defendants also request a pretrial evidentiary hearing on the admissibility of any co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E). Before a court may admit a statement under Rule 801(d)(2)(E), the court must find by a preponderance of the evidence that a conspiracy existed, that the defendant against whom the statement is offered was a member of the conspiracy, and that the statement was made during the course of and in furtherance of the conspiracy. *See United States v. Kone*, 307 F.3d 430, 440 (6th Cir. 2002). Trial courts may employ several methods to determine the admissibility of co-conspirator statements. *United States v. Vinson*, 606 F.2d 149, 152-53 (6th Cir. 1979).

Admissibility of co-conspirator statements may be established by any of the following methods: (1) at trial after the government has established the existence of the conspiracy by a preponderance of the evidence; (2) at a pretrial "mini-hearing"; or (3) by conditionally admitting the hearsay statements subject to a later showing of their admissibility. *Id.*; *see also United States v. Montgomery*, 258 F. App'x 622, 626 (6th Cir. 2009) (same) (affirming district court's refusal to conduct a pretrial "mini-hearing").  This Court "prefers the first approach and generally requires the Government to meet its initial burden by producing at trial non-hearsay evidence establishing the existence of the conspiracy and the defendant's involvement." *Happ*, 2008 WL 5101214, at *6; *see also Vinson*, 606 F.2d at 152 (noting that the mini-hearing approach has been criticized as "burdensome, time-consuming, and uneconomic").  The Court will adhere to its usual practice in this case.  As such, the Court **DENIES** Defendants' requests for a pretrial evidentiary hearing on the admissibility of their co-conspirators' statements.

Finally, Defendants request that, if the Court elects to determine admissibility at trial, the Court also order the Government to refrain from referring to any alleged co-conspirator statements during voir dire, opening statements, or in its case-in-chief before the Court rules on the admissibility of such statements.  Because this request aligns with the Court's preferred procedure for determining the admissibility of Rule 801(d)(2)(E) statements, it is **GRANTED**.  The Government must: (1) produce evidence of a conspiracy, each defendant's involvement in it, and whether the proffered statements were made during the course of and in furtherance of the conspiracy; *and* (2) receive a favorable ruling from the Court on those matters before the Government may reference or elicit from witnesses any co-conspirator statements.  *Happ*, 2008 WL 5101214, at *7.  For these reasons, the Court **DENIES** Wright's motion (Doc. 136) and **GRANTS IN PART AND DENIES IN PART** Harris's motion (Doc. 479).

### F.  Motion to Compel Handwriting Exemplars

Finally, the Government moved for an order compelling each defendant to provide a handwriting exemplar for use at trial.  (Doc. 725).  The Government contends that several defendants have provided handwritten jailhouse communications regarding the crimes in question or have posted handwritten summaries of proffers of potential witnesses to social media sites in connection with threats against those witnesses.  (*Id.*).  The Government hopes to elicit handwriting exemplars for comparison.  (*Id.*).  Initially, the Government requested an order compelling exemplars from all twenty defendants, but during the Court's October 8, 2015 status conference, Assistant United States Attorney David DeVillers indicated that the Government has narrowed the scope of its investigation to just four defendants: Ledbetter, Green, Coates, and Reynolds.  Accordingly, the Government requested to modify its earlier motion.  Upon request from defense counsel, Mr. DeVillers also pledged to pinpoint the communications and social media posting in question (which were already produced in discovery) so that defense counsel can adequately advise their clients and respond in kind to the Government's motion to compel.  In light of this information, the Court **GRANTS** the Government's request to narrow the scope of its motion to compel and finds the motion **MOOT** with respect to the remaining sixteen defendants.  Ledbetter, Green, Coates, and Reynolds will be afforded the full twenty-one days to respond to the Government's motion to compel.  Their responses are due on or before October 21, 2015.

### III.  CONCLUSION

For these reasons, the Court **GRANTS** all motions to join in other discovery requests (Docs. 240, 258, 407, 442, 469, 471, 473, 482, 487, 496, 498, 499, 501, 506, 559, and 688); **DENIES** Wright's motion for disclosure of co-conspirator statements (Doc. 136); **GRANTS IN PART AND DENIES IN PART** Harris's renewed motion for disclosure and admissibility of

17

co-conspirator statements (Doc. 479);  **FINDS AS MOOT** all other discovery requests from Defendants (Docs.  108, 109, 110, 128, 129, 134, 135, 138, 139, 140, 141, 142, 143, 144, 147, 148, 149, 150, 152, 156, 158, 159, 160, 188, 189, 190, 193, 195, 199, 200, 220, 255, 257, 259, 260, 278, 279, 326, 333, 337, 341, 346, 360, 386, 388, 389, 391, 405, 406, 408, 415, 418, 419, 420, 421, 422, 432, 433, 434, 441, 470, 474, 475, 476, 477, 478, 480, 481, 483, 485, 486, 494, 504, and 593); and **FINDS AS MOOT** the Government's motion to compel handwriting exemplars (Doc. 725) with respect to Defendants Wright, Gordon, Harris, Wilson III, Liston, Ussury, Bowers, Hill, Johnson, Smith, Wilson, Robinson, Patterson, Brown, Holt, and Wharton.

    **IT IS SO ORDERED.**

                                  __s/ Algenon L. Marbley__
                                    **ALGENON L. MARBLEY**
                                    **UNITED STATES DISTRICT JUDGE**

**DATED:  October 14, 2015**