IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 2:15-CR-080 |
| Plaintiff, | : | Case No. 2:14-CR-127 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| ROBERT B. LEDBETTER, *et al.* | : | |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

Defendants Christopher A. Harris and Deounte Ussury moved for a *Daubert* hearing regarding the testimony of a purported gang expert the Government intends to call at trial. (Doc. 829).[1] Harris and Ussury argue as follows: (1) Lt. Smith Weir of the Columbus Police Department is not qualified to provide expert testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); (2) even if Lt. Weir is qualified to provide expert testimony, his anticipated testimony fails under *Daubert* due to a lack of relevancy and reliability; (3) allowing Lt. Weir to testify as both a fact witness and as an expert witness could open up a gateway to testimonial hearsay in violation of the Confrontation Clause; and (4) allowing Lt. Weir to testify as both a fact witness and as an expert witness would confuse the jury, thus outweighing any evidentiary value of his expert testimony. As explained below, although Lt. Weir is not qualified to provide expert testimony under Rule 702 and *Daubert*, a different expert witness might pass muster. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' *Daubert* motion.

---

[1] Allen L. Wright, who pleaded guilty already, filed a substantially similar motion in limine regarding gang-expert testimony. (*See* Doc. 137). In the interest of judicial efficiency, Robert B. Ledbetter (Doc. 831), Rashad A. Liston (Doc. 848), Lance A. Green (Doc. 844), Thomas E. Coates (Doc. 838), DeShawn Smith (Doc. 851), Lance Reynolds (Doc. 850), and Johnathan Holt (Doc. 852) have filed motions seeking to join in Harris's and Ussury's underlying *Daubert* motion.

# I.  BACKGROUND

Harris and Ussury are two of twenty defendants originally indicted for their alleged involvement in the Short North Posse, an alleged criminal organization that operated the Short North area of Columbus, Ohio, from 2005 until 2014.  Collectively, Harris and Ussury face fifteen charges, including two counts of RICO conspiracy, seven counts of murder in aid of racketeering, five counts of murder through use of a firearm during and in relation to a drug trafficking crime, and one count of murder through use of a firearm during and in relation to a crime of violence.  Harris and Ussury are scheduled to stand trial with the first group of defendants, beginning April 4, 2016.

On December 11, 2015, the Government filed a Supplemental Notice of Expert Witnesses indicating that Lt. Smith Weir of the Columbus Police Department would testify both as a fact witness and as an expert witness "in regards to gang culture based on his experience, training, and education, pursuant to Rule 702 of the Federal Rules of Evidence."  (Doc. 798).

On January 22, 2016, Harris and Ussury jointly moved for a *Daubert* hearing to determine the following: (1) the scope of Lt. Weir's anticipated gang-culture testimony; (2) Lt. Weir's qualifications to serve as an expert witness on gang culture; (3) the admissibility of expert testimony regarding gang culture in general; (4) whether Lt. Weir's testimony regarding gang culture violates the Confrontation Clause by serving as a gateway to testimonial hearsay; and (5) whether the risk of jury confusion regarding Lt. Weir's dual role as a fact and expert witness outweighs the value of his expert testimony.  The Government timely filed a Response in Opposition (Doc. 863), to which Harris and Ussury filed a timely Reply Brief (Doc. 869).[2]

---

[2] Although not necessary, Lance A. Green (Doc. 875), DeShawn Smith (Doc. 893), and Johnathan Holt (Doc. 899) filed motions seeking to join in Harris's and Ussury's joint Reply Brief.

The Court conducted a *Daubert* hearing on March 3, 2016, at which Lt. Smith Weir testified. At that hearing, the Government introduced Lt. Weir's curriculum vitae into evidence as Exhibit 1 (also filed at Doc. 798-1). This Opinion and Order follows.

## II.  LEGAL STANDARDS

Federal Rule of Evidence 702 governs the testimony of expert witnesses as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

This rule reflects the Supreme Court's decisions in *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528 (6th Cir. 2008).

Together, Rule 702, *Daubert*, and *Kumho Tire* establish that district courts may admit expert testimony if it satisfies three requirements. *Id.* at 528-29 (describing the district courts' responsibility "of acting as gatekeepers to exclude unreliable expert testimony"). First, "the witness must be qualified by 'knowledge, skill, experience, training, or education.'" *Id.* at 529 (quoting Fed. R. Evid. 702). Second, the testimony "must be relevant, meaning that it will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* (quotation omitted). Third, "the testimony must be reliable." *Id.* To be relevant, expert testimony must "fit" with the issues to be resolved at trial. *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999). The reliability requirement, in turn, focuses on the methodology and principles underlying the testimony. *Id.* at 496-97. The proponent of the testimony—in this case, the Government—must establish admissibility by a preponderance of the evidence. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10).

## III. ANALYSIS

Harris and Ussury challenge five aspects of Lt. Weir's anticipated trial testimony. This Opinion and Order addresses only those arguments necessary to resolve the dispute.

### A. The Scope of Lt. Weir's Anticipated Testimony Is Permissible.

Harris and Ussury briefly challenge the scope of Lt. Weir's anticipated trial testimony. The Government contends that Lt. Weir will testify primarily about "the history, organization, structure, insignia, practices, activities, and the like of the Short North Posse (the gang at the center of this case) and the Crips (the nationwide gang with which the Short North Posse is affiliated)." (Doc. 863). Lt. Weir also will testify "about other gangs in the Columbus, Ohio area that, as alleged in the Superseding Indictment, interacted with the Short North Posse." (*Id.*). The Government posits that "[i]nformation about gangs such as the D-Block Bloods and the Poindexter Thug Life Bloods (both of which are affiliated with the Bloods, a nationwide gang) will provide context for the testimony of various other witnesses at trial." (*Id.*). The Government maintains, however, that Lt. Weir will <u>not</u> testify about the ultimate issues in this case, including whether the Short North Posse constitutes an "enterprise" or whether any of the conduct alleged qualifies as a predicate racketeering activity. (*Id.*).

Lt. Weir's testimony at the *Daubert* hearing confirms the Government's earlier representations as to the scope of his trial testimony as an opinion witness. As such, the scope of his testimony remains permissible at trial. *See United States v. Tocco*, 200 F.3d 401, 418-19 (6th Cir. 2000) (affirming introduction of expert testimony regarding "the structure, the organization, the rules, the interpretation of phrases . . . [and] the hierarchy and the roles of individuals [in La Cosa Nostra]" in multi-defendant RICO case); *see also United States v. Zerilli*, 128 F. App'x 473, 477-78 (6th Cir. 2005) (same).

As the Eastern District of Michigan recently summarized, "law enforcement officers [may] testify to the 'inner workings' of a particular gang . . . and provide a 'broader context' of a particular gang's 'origins and history.'"  *United States v. Norwood*, 16 F. Supp. 3d 848, 861 (E.D. Mich. 2014) (quotations and citations omitted).  These experts "can also add details about the structure, purpose, and activities of a particular gang."  *Id.* (citations omitted).  Likewise, "courts have permitted gang experts to provide opinion evidence regarding a particular group's slang, signifying colors, and other indicia of membership."  *Id.* (citation omitted).  Lt. Weir's testimony falls squarely under these categories of information.  Accordingly, the scope of his testimony as an officer-expert is permissible.

**B.  Lt. Weir, However, Is Not Qualified to Provide Opinion Testimony on Gang Culture.**

Although the *scope* of the Government's anticipated gang-culture testimony is permissible, the Government's proposed expert lacks the required "knowledge, skill, experience, training, or education" to provide that testimony.  *See* Fed. R. Evid. 702.  Put simply, the Government has identified the right message but the wrong messenger.

Lt. Weir's qualifications to provide expert testimony on gang culture fall short, even under the fairly liberal standards imposed by Rule 702 and *Daubert*.  For starters, Lt. Weir has *never* qualified as an expert, in this court or any other.  A case of this complexity provides the wrong maiden voyage for him to gain his sea legs.  *See Norwood*, 16 F. Supp. 3d at 863 (prohibiting proposed gang-expert testimony, in part, because proffered expert "believed he had been qualified as a 'narcotics/gang' expert four times," but in truth, "only one case involved gangs," and even in that single instance, "the subject of his testimony addressed the use of weapons by gangs in drug trafficking"—a "far cry" from the "more generalized variety of gang practices and activities" to which the government wanted him to testify).

5

Moreover, although Lt. Weir has served as a police officer for seventeen years, with over sixteen years of service on the Columbus Police Department, he admits that only four of those years (2006 to 2010) involved a focus on gang activity, and even then, gang investigations were not his only responsibilities. These experiences fall short of the typical gang-expert resume. *Compare Tocco*, 200 F.3d at 418 (affirming admission of expert testimony from FBI agent with "extensive experience in the investigation of organized crime in the Detroit area, including 22 years with the FBI, 17 of which were spent in organized crime investigations," and who also spent ten years "as the Cosa Nostra coordinator for the Detroit division, and as liaison with other FBI offices and FBI headquarters"), *and United States v. Rodriguez*, No. CR 12-3109-10, 2015 WL 5138146, --- F. Supp. 3d ---, at *3 (D.N.M. Aug. 24, 2015) (allowing expert testimony from FBI agent who "primarily investigates Mexican drug cartels . . . and gang/criminal enterprises" where he "ha[d] been a law enforcement officer for sixteen years, six of which were with the FBI," and where he "handle[d] a large number of often high-level informants in the Juarez Cartel"), *with Norwood*, 16 F. Supp. 3d at 863 (prohibiting proposed gang-expert testimony, in part, because his "stint as a supervisory special agent for the Safe Streets and Gang Unit at FBI Headquarters . . . lasted only 18 months" and because "[i]t is not clear from the record that [his] career at the FBI focused extensively on how gangs operated").

Further, although Lt. Weir has taken several training courses on law-enforcement practices generally, only two of those courses, which he took in 2002 and 2003, involved any focus on gang culture. Even then, the courses lasted only one week each, and Lt. Weir testified on cross-examination that participants earned their certifications simply by paying the required fee and showing up. This training falls short under the Court's gatekeeping function. *Compare Rodriguez*, 2015 WL 5138146, at *3 (discussing expert's qualifications, including having

"undergone more than 800 hours of 'formal training in the area of drug, firearm, and money laundering investigations,' including over forty formal classes" and his designation from the FBI as "a 'subject matter expert' on the Juarez Cartel"), *and United States v. Coxcon-Chagal*, 886 F. Supp. 2d 1222, 1241 (D.N.M. 2012) (discussing DEA agent's training and education, including "having attended a sixteen-week academy for law enforcement officers"), *with Am. Gen. Life & Accident Ins. Co. v. Ward*, 530 F. Supp. 2d 1306, 1313 (N.D. Ga. 2008) (excluding proposed testimony, in part, because "although [proffered expert] has received 104 hours of instruction . . . there is no evidence that he has ever taken a certification examination or a proficiency test").

Finally, although Lt. Weir also assisted in the development of an anti-gang grant by writing the background section, which facilitated the investigation of street gangs in the Short North and Weinland Parks areas of Columbus, he conceded that his contribution was akin to a factual recitation, and that the United States Attorney's Office completed the remaining substantive portions of the grant application. Lt. Weir did not explain how this one-time contribution to the grant application would inform his thinking or assist the jury in this case. *See Ward*, 530 F. Supp. 2d at 1313 (excluding proposed expert testimony from "Assistant Chief Investigator for the Clayton County Solicitor General's Office," in part, because although "[h]e has conducted [handwriting examinations] in the course of his employment since 1997 . . . his duties are not limited to document examination . . . . [but] also include routine law enforcement functions"). The same holds true for Lt. Weir. While he no doubt has *some* experience with gang investigations, he lacks "*significant* experience investigating a particular gang" to provide expert testimony on the Short North Posse or the Crips. *See Norwood*, 16 F. Supp. 3d at 861-62 (emphasis added) (collecting cases).

7

Although Lt. Weir's "knowledge, skill, experience, training, [and] education" fall short of the required showing for him to provide *expert* testimony on gang culture, *see* Fed. R. Evid. 702, this Opinion and Order in no way prohibits him from testifying as a *fact* witness in this case. The Government has indicated that it intends to call Lt. Weir as a fact witness to testify regarding his case work involving the Short North Posse and, from the Court's perspective, that testimony generally would be admissible.

Moreover, although *Lt. Weir's* qualifications fall short, the Court passes no judgment on the qualifications of *other* potential gang-expert witnesses the Government may seek to call at trial. As explained, the scope of this proffered testimony is admissible and, provided it comes from someone with the requisite experience or training, would "certainly [be] relevant and reliable under the principles of *Daubert*." *See Tocco*, 200 F.3d at 419 ("This type of evidence regarding the inner-workings of organized crime has been held to be a proper subject of expert opinion because such matters are generally beyond the understanding of the average layman." (quotation omitted)); *see also United States v. Archuleta*, 737 F.3d 1287, 1296 (10th Cir. 2013) (affirming admission of expert testimony regarding "the operation of the Sureños gang," including "details about [its] structure, purpose, and activities," because "[t]he average juror is unlikely to be aware of those facts"); *Zerilli*, 128 F. App'x at 477-78 (same for Detroit mafia).

Because the Government has not shown by a preponderance of the evidence that Lt. Weir is qualified to provide expert testimony on gang culture, the Court need not reach Defendants' remaining arguments regarding law-enforcement officials testifying as both expert witnesses and fact witnesses in the same case. *See generally United States v. Mejia*, 545 F.3d 179, 186-200 (2d Cir. 2008) (discussing pitfalls with admitting dual-hatted law enforcement testimony regarding gang culture).

## IV.  CONCLUSION

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' *Daubert* motion (Doc. 829).  Lt. Smith Weir may not testify as an expert witness on gang culture in these trials.  Allen Wright's substantially similar motion (Doc. 137) is **MOOT** because he pleaded guilty and will not be proceeding to trial.  The remaining motions seeking to join in the underlying *Daubert* motion (Docs. 831, 838, 844, 848, 850, 851, and 852) or Defendants' Reply Brief (Docs. 875, 893, and 899) are **GRANTED but MOOT**.  Although not necessary, Harris and Ussury filed a duplicate motion (Doc. 43) on the Court's docket in Joined Case No. 2:15-cr-080.  That motion likewise is **GRANTED IN PART** and **DENIED IN PART**.  Co-defendant Robert Ledbetter likewise filed a motion to join the underlying *Daubert* motion in Joined Case No. 2:15-cr-080.  (Doc. 44).  Ledbetter's motion to join is **GRANTED but MOOT**.

**IT IS SO ORDERED.**

                                                  **s/ Algenon L. Marbley**
                                                  **ALGENON L. MARBLEY**
                                                  **UNITED STATES DISTRICT JUDGE**

**DATED:  March 15, 2016**